UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Kathleen Scannell

   v.                                    Civil No. 06-cv-227-JD
                                       Opinion No. 2006 DNH 101

Sears Roebuck and Company


O R D E R

After resigning from her job as Human Resource Manager at the Sears Roebuck store in Newington, New Hampshire, Kathleen Scannell brought three separate legal actions against Sears.[1] In this case, she alleges that her employment at Sears was wrongfully terminated through constructive discharge due to the long hours she was required to work without compensation or any other sign of appreciation from Sears. Sears moves to dismiss her claim on the ground that she failed to allege a wrongful termination claim under New Hampshire law. Sears also moves for reconsideration of an order entered by Judge McAuliffe pertaining to consolidation of Scannell's three cases.

Standard of Review

In considering a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts the facts alleged

---

[1] The other cases are Kathleen Scannell and Wendy Bucacci v. Sears Roebuck and Company and Susan Sughrue, 06-cv-261-JM (D.N.H. July 14, 2006), and Kathleen Scannell and Wendy Bucacci v. Sears Roebuck and Company, 06-cv-220-SM (D.N.H. June 14, 2006). This case and case number 06-cv-261-JM were filed in state court and then removed to federal court by Sears.

in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  Edes v. Verizon Comms., 417 F.3d 133, 137 (1st Cir. 2005).  The court must determine whether the complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim."  Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002).  "The standard for granting a motion to dismiss is an exacting one:  'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'"  McLaughlin v. Boston Harbor Cruise Lines, Inc., 419 F.3d 47, 50 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)).

Background

Scannell alleges that she was employed by Sears for more than twenty-seven years, beginning in 1977.  From September of 2004 until March 16, 2006, she was Human Resources Manager at the Sears store in Newington.  Scannell was an hourly employee who, based on Sears's policy, could not be paid for any more than forty hours each week, no matter how many hours she actually worked.  Hours worked over forty in any given week were "off of the clock."

Because the Sears store in Newington was understaffed, Scannell regularly worked far more than forty hours per week, often working twelve hours a day and six or seven days a week. Beginning in November of 2005, Sue Sughrue was the store manager. Changes in corporate management and Sughrue's new requirements increased Scannell's responsibilities. Sughrue required the Human Resources department to be open from 7:00 a.m. to 8:30 p.m. or 9:30 p.m. every day. Sughrue increased Scannell's duties to include answering the telephone, making change, and other office responsibilities, while the Sears regional human resources manager directed Scannell to spend all of her time on human resources functions.

Both Sughrue and the assistant store manager knew that Scannell could not complete all of her assigned work within forty hours per week. Scannell asked them what they could do to help her, but they had no answers. Facing a particularly demanding project that was to be completed in March of 2006, Scannell told Sughrue and the assistance store manager that she would continue to work off of the clock to get that project completed but that she would not continue to do so after that time.

In anticipation of a visit from the regional manager in mid-March, Scannell had to input employee annual evaluation information into a database, including her own evaluation score.

She asked the assistant store manager for her final evaluation score to include in the database, and he gave it to her on a post-it note.  Evaluation scores range from one at the low end to five at the high end.  In the past, Scannell had never received an evaluation lower than 3.4.  Despite the long hours she was working without compensation to complete the increased work assigned to her, her evaluation score in March of 2006 was 2.9.  That low score meant that she would not qualify for even a minimal raise.  She realized that to meet the performance goals set for her, she would have to work even more uncompensated hours than she was then working.  She also realized that her efforts to complete the work had not been appreciated.  As a result, she resigned on March 16, 2006.

## Discussion

Sears moves to dismiss Scannell's wrongful termination claim and also moves for reconsideration of Judge McAuliffe's order on consolidation of the cases.  These motions are addressed separately.

I.  <u>Motion to Dismiss</u>

In her complaint, Scannell characterizes her claim as constructive discharge.  For purposes of the present motion, however, both parties understand her claim to allege wrongful termination.  Sears moves to dismiss Scannell's claim on the grounds that she has not alleged the required elements of a wrongful termination claim or constructive discharge under New Hampshire law.  Scannell objects to the motion, arguing that she has adequately alleged all elements of her claim.  Sears filed a reply stating that "Scannell completely ignores the essential elements of a wrongful discharge claim and instead relies on smoke and mirrors to try to manufacture such a claim where none exists."  Reply at 1.

To state a claim for a wrongful termination under New Hampshire law a plaintiff must allege:  "(1) the termination of employment was motivated by bad faith, retaliation or malice; and (2) that she was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn."  <u>Wenners v. Great State Beverages</u>, 140 N.H. 100, 103, 663 A.2d 623 (1995); <u>accord</u> <u>Porter v. City of Manchester</u>, 151 N.H. 30, 37-39 (2004) (providing history of wrongful discharge cause of action).  "[P]roperly alleging constructive discharge satisfies the termination component of a

wrongful discharge claim" as long as the employer's actions leading to a constructive discharge were motivated by bad faith, retaliation, or malice.  Karch v. BayBank FSB, 147 N.H. 525, 536 (2002).

    A.  Public Policy

Sears argues that Scannell failed to allege a public policy that was violated by her termination because she cannot rely on the policy underlying the Fair Labor Standards Act or the state wage laws and because her complaints are merely personal disagreements with Sear's management policies.  Scannell asserts that the public policy underlying her claim is a combination of statutory and non-statutory policy.

Under New Hampshire law, a public policy necessary to support a wrongful discharge claim may derive from a statutory or a non-statutory policy.  Cilley v. N.H. Ball Bearings, Inc., 128 N.H. 401, 406 (1986).  Non-statutory public policies are "the interests of society and . . . the morals of the time."  Harper v. Healthsource N.H., Inc., 140 N.H. 770, 775 (1996); see also Cilley, 128 N.H. at 406.  Statutory public policy is one that is embodied by a statute such as the Occupational Safety and Health Act.  See, e.g., Cloutier v. Great Atl. & Pac. Tea Co., Inc., 121 N.H. 915, 923 (1981).

A statutory policy will not support a wrongful termination claim, however, "where the legislature intended to replace it with a statutory cause of action . . . ."  Wenners, 140 N.H. 103.  The legislature, however, must provide a "clear statutory intent to supplant the common law cause of action."[2]  Id.  Determining whether a statutory cause of action was intended to replace a wrongful termination claim requires a thorough preemption analysis.  See Bliss v. Stow Mills, Inc., 146 N.H. 550, 553-54 (2001) (citing Mason v. Smith, 140 N.H. 696, 701 (1996)).

While the first prong of a wrongful termination claim focuses on the nature of the employer's actions, the public policy prong pertains to the employee's action:  whether the employee was terminated because "he performed an act that public policy would encourage, or refused to do that which public would condemn."  Porter, 151 N.H. at 38 (emphasis added); see also

---

[2]Decisions of this court have at times broadly suggested, based on Smith v. F.W. Morse & Co., 76 F.3d 413 (1st Cir. 1996), and Howard v. Dorr Woolen Co., 120 N.H. 295 (1980), that no policy based on a statute that provides a remedy for the same injury may be used to support a wrongful termination claim.  See Parker B. Potter, Jr., Revisiting the Scrap Heap:  The Decline and Fall of Smith v. F.W. Morse & Co., 4 Pierce Law Review 481 (2006).  As Bliss v. Stow Mills, Inc., 146 N.H. 550, 553-54 (2001), which was decided after Howard and Smith, makes plain, the availability of a statutory remedy alone does not bar a wrongful termination claim based on that statute's policy.

7

Harper, 140 N.H. at 776 ("'[A]n employer violates an implied term of a contract for employment at-will by firing an employee out of malice or bad faith in retaliation for <u>action taken or refused by the employee in consonance with public policy</u>.'" (emphasis added) (quoting <u>Centronics Corp. v. Genicom Corp.</u>, 132 N.H. 133, 140 (1989)); <u>Frechette v. Wal-Mart Stores, Inc.</u>, 925 F. Supp. 95, 98 (D.N.H. 1995).  Unless the existence or lack of a public policy can be established as a matter of law, that issue is a jury question.  <u>Cilley</u>, 128 N.H. 401, 406 (1986).

Scannell asserts that she was constructively discharged when she refused to continue to work longer and longer hours without compensation or any other appreciation from her employer.  She finds statutory policy to support her action in the Fair Labor Standards Act ("FLSA"), "requiring[ing] an enhanced payment for hours worked beyond 40 in any week" and the New Hampshire wage laws, "ensur[ing] that employees will be paid for all hours worked."  Pl. Mem. at 4.  In addition, she asserts non-statutory public policies against "one of the world's wealthiest corporations . . . put[ting] so much pressure on an hourly supervisor that she literally has little life outside of her work, especially when it refused to compensate her for many of the hours worked" and "apparently limitless corporate need to manipulate employees into working more and more hours off-the-

8

clock as more and more responsibilities are piled on, while the employer gives a terrible evaluation designed to ensure that the employee feels additional pressure to work even harder." Id.

Sears has not provided the preemption analysis that is necessary to preclude reliance on a statutory policy for purposes of a wrongful termination claim under New Hampshire law.[3] See Bliss, 146 N.H. 553-54.  Therefore, that basis for the motion to dismiss is unavailing.

Sears asserts that Scannell merely disagreed with Sears's management policies, which does not state a public policy basis for a wrongful termination claim.  "[A]n employee's expression of disagreement with a management decision is not an act protected by public policy." Short v. Sch. Admin. Unit No. 16, 136 N.H. 76, 85 (1992).  Contrary to Sears's characterization of the complaint, Scannell does not merely allege that she disagreed with Sears's management policy.  Instead, she also alleges that Sears's management policy, which forced her to resign, violated public policy.

---

[3]Although the First Circuit held that a remedy under the FLSA precluded a wrongful discharge claim under Massachusetts law, the New Hampshire standard is substantially different, making that case inapposite to Scannell's claim here. See Valerio v. Putnam Assocs. Inc., 173 F.3d 35, 45-46 (1st Cir. 1999).

Sears also argues that Scannell did not allege that she was terminated because she performed acts that public policy would encourage or refused to perform acts that public policy would condemn.  Contrary to Sears's view, however, Scannell alleges that she refused to continue to work without pay, which she contends is an action supported by the policies of the FLSA and the New Hampshire wage laws.  She also alleges that she refused to continue to be pressured into working more and more hours without pay and without positive acknowledgment of any kind from Sears, which is an action a jury could find is encouraged by a non-statutory public policy.  Whether or not the public policies asserted by Scannell are sufficient to support her wrongful termination claim cannot be resolved as a matter of law.  Because she alleges that her decision to resign would be encouraged by the articulated public policies, she has alleged enough to avoid dismissal on that element of her claim.

B.  Constructive Discharge

Sears argues that Scannell has not alleged sufficient facts to support the constructive discharge element of her claim.[4]

---

[4]Sears included a paragraph in section three of its memorandum, which is titled:  "Scannell Has Not Alleged

10

"Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign." <u>Karch</u>, 147 N.H. at 536.  "'Relatively minor abuse of an employee is not sufficient for a constructive discharge.'  2 M. Rothstein et al., <u>Employment Law</u> § 8.7, at 258 (1999).  'Rather, the adverse working conditions must generally be ongoing, repetitive, pervasive, and severe.'  <u>Id</u>."  <u>Porter</u>, 151 N.H. at 42.

  Scannell alleges that she worked for Sears for twenty-seven years, and during that time, she worked many uncompensated hours.  In the last two years of her employment, however, the amount of work she was expected to do and the number of uncompensated hours she was expected to work increased dramatically.  She tried to accommodate conflicting directions from the store manager and the regional manager and tried to complete the projects and goals that were assigned to her.  Her efforts required her to work a

---

Sufficient Facts To Support A Constructive Discharge," that challenges the sufficiency of her allegations of bad faith, retaliation, and malice, the first element of a wrongful termination claim.  Scannell appears to have interpreted that section as pertaining only to constructive discharge allegations, as would be expected from the title.  Although the court agrees that Scannell's allegations pertaining to the first element are minimal and largely conclusory, taking the allegations as a whole and in the light most favorable to her, the complaint is at least minimally sufficient.

significant and increasing number of "off-of-the-clock" hours. Despite all of her work, Sears did not appreciate the effort she was making and expected her to work even longer hours to accomplish its unreasonable goals.  Those allegations are sufficient to state a claim for constructive discharge.

II.  Motion for Reconsideration

As noted above, Scannell filed three cases pertaining to her employment at Sears:  case number 06-cv-220, assigned to Judge McAuliffe, case number 06-cv-227, assigned to Judge DiClerico, and case number 06-cv-261, assigned to Judge Muirhead.  The deputy clerk issued a potential consolidation order on July 18, 2006, entered in all three cases, noting that Scannell's three suits each referenced the others as related cases and ordering that unless counsel advised the court against consolidation, the cases would be consolidated. Doc. no. 7.  Scannell's counsel filed a response on August 2, 2006, in case number 06-cv-220-SM and case number 06-227-JD only, opposing consolidation and explaining the differences in the cases.  Judge McAuliffe issued an order on August 3, 2006, that was entered in case number 06-cv-220-SM and this case, concluding that consolidation was

12

inappropriate because of the differences in the cases.  Sears now files a motion to reconsider Judge McAuliffe's decision, but Sears filed it only in this case, 06-cv-227-JD, not in Judge McAuliffe's case, 06-cv-227-SM.

As is discussed above, Scannell's only claim in this case is wrongful termination under New Hampshire law.  The other two cases are both putative class actions.  In case number 06-cv-220-SM, Scannell and Wendy Bucacci allege claims under the FLSA, and in case number 06-cv-261- JM, Scannell and Bucacci allege claims under New Hampshire wage laws.  Having reviewed the three cases, the undersigned concurs with Judge McAuliffe that consolidation of this case with case number 06-cv-220-SM would not be appropriate because of the differences in the claims and the nature of the cases.  For the same reasons, it would not be appropriate to consolidate this case with case number 06-cv-261-JM.

Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 4) is denied.  The defendant's motion for reconsideration (document no. 20) is terminated, as it was filed in the wrong case.

SO ORDERED.

*[signature: Joseph A. DiClerico, Jr.]*

Joseph A. DiClerico, Jr.
United States District Judge

September 6, 2006

cc:  Timothy M. Harrington, Esquire
     David M. Jaffe, Esquire
     Michael Mankes, Esquire
     David P. Slawsky, Esquire